EXHIBIT "A"

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff, Jessica Hurt, on behalf of herself and Opt-In Plaintiffs Mark Benson, Tracie Brocka, Dolores Meza, Alicia Boone, Dalton Bailey, Angela Byram, Jessica Morgan, Joshua Ray, Anthony Urrabazo, and Tavarus Locklear, on the one hand, and Defendants, RT Pizza, Inc. d/b/a/ Domino's Pizza and Ricky Teel, on the other hand, agree to a settlement, subject to approval as discussed below, through this Settlement and Release Agreement ("Settlement" or "Agreement"):

## I.   DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1.   "Action" means the lawsuit entitled *Jessica Hurt v. RT Pizza, Inc. et al.* (Case No. 7:20-cv-00057-WLS), pending in the U.S. District Court for the Middle District of Georgia.

2.   "Child-Support Lien Opt-ins" means Opt-In Plaintiffs who are in default, or have any arrearages under, a Court support order, as identified by Defendants through the Child Support Lien Network's Insurance Intercept Database.

3.   "Collective Counsel" means the law firms of Morgan & Morgan, PA and Forester Haynie PLLC.

4.   "Collective Representative" or "Plaintiff" or "Named Plaintiff" means Jessica Hurt.

5.   "Court" means the U.S. District Court for the Middle District of Georgia.

6.   "Defendants" means RT Pizza, Inc. and Ricky Teel.

7.   "Defendants' Counsel" means the law firm of Fisher & Phillips, LLP.

8.   "Effective Date" means the day the Settlement is Final as defined in ¶ 9 below.

9.    "Final" means that the Court has granted approval of the Settlement without modification.

10.    "Settlement Amount" means Fifty-Two Thousand Nine Hundred and Fifty-Nine Dollars and Zero Cents ($52,959.00).   Defendant's gross aggregate payments under this Agreement shall not under any circumstances exceed the "Settlement Amount."

11.    "Opt-In Plaintiff(s)" mean Jessica Hurt and Mark Benson, Tracie Brocka, Dolores Meza, Alicia Boone, Dalton Bailey, Angela Byram, Jessica Morgan, Joshua Ray, Anthony Urrabazo, and Tavarus Locklear, who have all filed a valid and timely Consent to Join Form with the Court and are bound by the release of claims set forth herein.

12.    "Parties" means Plaintiff, Opt-In Plaintiffs, and Defendants, RT Pizza, Inc. and Ricky Teel, and "Party" means any of the Parties.

13.    "Settlement Payment" means the distribution of the Settlement Amount to Collective Counsel.

## II.    <u>RECITALS</u>

14.    On March 30, 2020, Plaintiff filed a complaint with the Court, on behalf of herself and a putative collective of similarly situated delivery drivers, for alleged failure to pay proper minimum wage under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") related to claims that she was not properly reimbursed for mileage expenses related to the business use of her personal vehicle.  (*See* Dkt. No. 1.)

15.    On October 29, 2020, the Parties mediated before Allen Blair, Esq., an experienced wage and hour collective action mediator, and were able to reach an agreement in principle to settle the putative collective action.

- 2 -

16.     On February 4, 2021, the Parties filed a Motion for Settlement Approval seeking Court approval of the settlement terms agreed to at mediation.  (*See* Dkt. No. 28.)

17.     On February 12, 2021, the Court denied without prejudice the Parties Motion for Settlement Approval because the Parties' proposed settlement included a confidentiality provision and sought to recoup Collective Counsel's attorneys' fees from a common settlement fund.  (*See* Dkt. No. 30.)

18.     On April 12, 2021, in the absence of a Court-approved settlement, the Parties proceeded to litigation and filed a Joint Motion to Conditionally Certify a Collective Action, which the Court approved on April 14, 2021.  (*See* Dkt. Nos. 33 – 34.)

19.     Between June 3, 2021, and June 16, 2021, Opt-In Plaintiffs Mark Benson, Tracie Brocka, Dolores Meza, Alicia Boone, Dalton Bailey, Angela Byram, Jessica Morgan, Joshua Ray, Anthony Urrabazo, and Tavarus Locklear filed valid and timely Consent to Join Forms with the Court.  (*See* Dkt. Nos. 35 – 40.)

20.     The Parties thereafter exchanged documents and information pertaining to the Opt-In Plaintiffs' mileage and reimbursement data for purposes of renewed settlement negotiations.

21.     On October 14, 2021, the Parties reached an agreement to resolve the claims of Plaintiff and the Opt-In Plaintiffs, the terms of which are contained herein.

### III.     TERMS OF SETTLEMENT

22.     <u>Condition Precedent</u>.  The Settlement and the payments described herein are conditioned upon the Settlement becoming Final.

23.     <u>Settlement Amount</u>:  Defendant's total aggregate payments under this Agreement shall under no circumstances exceed Fifty-Two Thousand Nine Hundred and Fifty-Nine Dollars and Zero Cents ($52,959.00).

24.     <u>Taxes</u>.   Plaintiff and the Opt-In Plaintiffs shall indemnify and hold each Defendant and Defendants' Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification); provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendants that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Opt-In Plaintiffs hereunder shall not extend to any potential employer's share of employment taxes owed by Defendants, if any. The Parties intend this settlement to reimburse Opt-In Plaintiffs for non-taxable vehicle costs expended by Opt-In Plaintiffs in furtherance of their delivery duties on behalf of Defendants.

25.     <u>Collective Counsel's Attorneys' Fees, Costs and Expenses</u>:  Plaintiff and/or Collective Counsel will request, and Defendants will not oppose, a payment for attorneys' fees for all the work already performed and all the work remaining to be performed in this Action, including the costs and expenses incurred by Collective Counsel in prosecuting the Action and implementing the terms of the Settlement, in a gross amount of Thirty-Seven Thousand Five Hundred Dollars and Zero Cents ($37,500.00).  Collective Counsel shall be issued an IRS Form 1099 in the amount of their attorneys' fees.  The award of Collective Counsel's attorneys' fees, costs and expenses approved by the Court shall be paid to Collective Counsel within fifteen (15) days after the settlement becomes Final.  The Parties agree that any reduction in the amount of

attorneys' fees, costs and/or expenses approved for Collective Counsel shall not be a basis for rendering the entire Settlement voidable or unenforceable.  Any reduction of the amount of attorneys' fees, costs and/or expenses which is ordered by the Court and affirmed during any appeal shall reduce the Settlement Amount accordingly.

26.    <u>Payment to Opt-In Plaintiffs</u>:

(a).    Distribution of Payment to Opt-In Plaintiffs:  Within fifteen (15) days after the Settlement becomes Final, Defendants shall transmit to Collective Counsel the total amount of Fifteen Thousand Four Hundred Fifty-Nine Dollars and Zero Cents ($15,459.00) to be distributed to the Opt-In Plaintiffs as follows (the "Individual Settlement Payments"):  Jessica Hurt: $623.66; Mark Brenson: $684.31; Tracie Brocka: $175.70; Dolores Meza: $620.11; Alicia Boone: $13.31; Dalton Bailey: $4,349.90; Angela Byram: $462.23; Jessica Morgan: $23.65; Joshua Ray: $281.33; Anthony Urrabazo: $6,698.29; and Tavarus Locklear: $1,526.51;

(b)    Tax Allocation of Settlement Payments: One-hundred percent (100%) of the Individual Settlement Payments made will be treated as non-taxable payments in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties. No payroll or tax withholdings will be taken from these payments.  The Opt-In Plaintiffs will be responsible for correctly characterizing their respective settlement payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law). Any tax obligation(s) arising from the Individual Settlement Payments will be the sole responsibility of each Opt-In Plaintiff. Opt-In Plaintiffs must indemnify, defend and hold Defendants harmless for any federal, state and local tax liability, including taxes, interest, penalties or the like, and required withholdings, which may be or is asserted against or imposed upon Defendants by any taxing authority based upon any failure to pay any taxes due on the

amounts being paid to the Opt-In Plaintiffs pursuant to this Agreement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendants that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Opt-In Plaintiffs hereunder shall not extend to any potential employer's share of employment taxes owed by Defendants, if any. None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and the Opt-In Plaintiffs have not relied on any such representation in determining the tax treatment of such sums.

(c)     Classification of Individual Settlement Payments for Benefits Purposes:  None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendants or any of their current or former parent companies, subsidiaries or affiliates.

(d)     Child-Support Lien Opt-Ins:   Child-Support Lien Opt-Ins shall be paid in accordance with the terms set forth herein.   All Individual Settlement Payments allocated to Child-Support Lien Opt-ins shall be retained in a Qualified Settlement Fund pending an administrative order from the governing child support enforcement agency ("CSEA") relating to the transmittal and/or release of such funds. Defendants shall issue checks to the appropriate recipient(s) in strict adherence with the CSEA's administrative order(s), on a case-by-case basis once the Settlement becomes Final.

28.   <u>Conflict of Terms</u>:  In the event of a conflict between the terms set forth in any communication and this Agreement, the terms of this Agreement shall control.

## IV.     SETTLEMENT PROCEDURES

29.     <u>Motion for Approval</u>:  Within ten (10) business days after the execution of this Agreement by all Parties, Plaintiff shall file a motion for approval of the Settlement, applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission:

(a)     Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and direction consummation of its terms and provisions;

(b)     Approving Collective Counsel's motion for attorneys' fees and costs;

(c)     Permanently enjoining all Opt-In Plaintiffs from prosecuting against the Released Parties (defined below) any and all of the Opt-In Plaintiffs' Released Claims (defined below); and

(d)     Dismissing the Action with prejudice.

## V.     RELEASE OF CLAIMS

30.     <u>Opt-In Plaintiffs' Released Claims</u>: When the Settlement becomes Final, the Plaintiff and Opt-In Plaintiffs will have released and forever discharged Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising on or before the Settlement becomes Final ("Release Period"), arising under the FLSA or any similar federal, state, municipal, or local laws, for mileage reimbursement claims; minimum wage claims; and overtime claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment

- 7 -

thereon, for res judicata purposes shall be co-extensive with this release of claims.  (collectively, the "Released Claims").

31.     <u>Release of Fees and Costs</u>:  Plaintiff and the Opt-In Plaintiffs further irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendants for attorneys' fees, costs, or expenses associated with this Action, including but not limited to those attorneys' fees, costs, or expenses associated with Collective Counsel's representation of the Plaintiff and the Opt-In Plaintiffs in this Action. Plaintiff and the Opt-In Plaintiffs further understand and agree that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Collective Counsel's representation of Plaintiff and the Opt-In Plaintiffs in this Action.

## VI.     <u>ADDITIONAL PROVISIONS</u>

32.     <u>No Waiver of Arbitration Agreements</u>:  The Parties agree that, by entering into and seeking Court approval of this Agreement, Defendants in no way waive any rights to enforce arbitration agreements entered into between Defendants and the Opt-In Plaintiffs, including the waiver of class and/or collective action litigation, or to enforce similar agreements with other employees.

33.     <u>Signatories</u>:  The respective signatories to the Settlement represent that he, she or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.

34.     <u>Cooperation to Implement Settlement</u>: The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement.  The Parties shall use their best efforts, including all efforts contemplated by

this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

35.    <u>Disputes</u>: Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Court. Prior to any such resort to the Court, counsel for the Parties will confer in good faith to resolve the dispute. If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Court, unless the Parties agree otherwise.

36.    <u>No Prior Assignments</u>: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

37.    <u>No Admission of Liability</u> and <u>Inadmissibility of Settlement</u>:

(a)    Defendants deny liability to Plaintiff and the Opt-In Plaintiffs for any claim or cause of action. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiff in the Action. Defendants have repeatedly asserted and continue to assert defenses thereto, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  Defendants also have denied and continue to deny the allegations that Plaintiff and/or the Opt-In Plaintiffs have suffered damage or that Plaintiff and/or the Opt-In Plaintiffs were harmed by the conduct alleged in the Action.

(b)    Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part

of Defendants, or of the truth of any of the factual allegations in the Complaint filed in the

Action; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence

of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral

proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or

evidence of the appropriateness of these or similar claims for class and/or collective action

treatment other than for purposes of administering this Agreement.  The Parties understand and

agree that this Agreement and any exhibit hereto are settlement documents and shall be

inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this

Agreement.

        38.    <u>Fair, Adequate, and Reasonable Settlement</u>: The Parties agree that the Settlement

is fair, adequate, and reasonable, and will so represent it to the Court; provided, however, that

nothing herein is intended to, and shall not be construed to, waive the confidentiality of the

Parties' settlement or settlement negotiations and discussions pursuant to the Federal Rules of

Evidence.

        39.    <u>Waiver of Appeals</u>: The Parties agree to waive all appeals from the Court's final

approval of this Settlement, unless the Court materially modifies the Settlement; provided,

however, that Plaintiff may appeal any reduction in the amount of Collective Counsel's fees and

expenses. Any reduction in the amount of Collective Counsel's fees, Collective Counsel's

expenses, and/or the service payment to the Collective Representative will not, however,

constitute a material modification of the Settlement and will not be grounds to void the

Settlement.

        40.    <u>No Tax Advice</u>: Neither Collective Counsel nor Defendants' Counsel intend

anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall

anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

41.     <u>Use of Confidential Documents and Information</u>:    Plaintiff and Collective Counsel agree to keep confidential all documents and information produced in the course of discovery and litigation of this Action, and Plaintiff agrees to return any such documents to Collective Counsel. All documents and information produced in discovery in this Action, otherwise obtained in the course of the litigation of this Action, as well as all documents and information produced in connection with effectuation of this Settlement, shall only be used for purposes directly related to the effectuation of this Settlement.

42.     <u>Cooperation in Drafting</u>: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

43.     <u>Applicable Law</u>:  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Georgia, without giving effect to any conflict of law principles or choice of law principles.

44.     <u>Captions and Headings</u>:  Captions, headings or paragraph titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

45.     <u>Modification</u>: This Settlement may not be changed, altered, or modified, except in writing, and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

46.     <u>Integration Clause</u>: This Settlement contains the entire agreement between the Parties relating to the resolution of the Action. No rights under this Agreement may be waived except in writing.

47.     <u>Binding on Assigns</u>: This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustee, executors, administrators, successors and assigns.

48.     <u>Counterparts</u>:  This Agreement shall be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

49.     <u>Interim Stay of Proceedings in Action</u>:  The Parties agree to hold in abeyance all proceedings in the Action, except such proceeding necessary or appropriate to implement and complete the Settlement.

50.     <u>Enforceability</u>:  When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the Court pursuant to any applicable provision of law.

Date: _____        _____
                                  RT Pizza, Inc.

                                  By its: _____

Date: _____

Date: __Nov 5, 2021__             _____
                                  Ricky Teel
                                  *Jessica Hurt (Nov 5, 2021 12:58 EDT)*
                                  _____
                                  Jessica Hurt

- 12 -

46.     Integration Clause: This Settlement contains the entire agreement between the Parties relating to the resolution of the Action. No rights under this Agreement may be waived except in writing.

47.     Binding on Assigns: This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustee, executors, administrators, successors and assigns.

48.     Counterparts:  This Agreement shall be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

49.     Interim Stay of Proceedings in Action:  The Parties agree to hold in abeyance all proceedings in the Action, except such proceeding necessary or appropriate to implement and complete the Settlement.

50.     Enforceability:  When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the Court pursuant to any applicable provision of law.

Date:   _11-4-21_                         _____
                                          RT Pizza, Inc.

                                          By its: _Ricky Teel     President_

Date:   _11-4-2021_                       _____
                                          Ricky Teel

Date:   _____       _____
                                          Jessica Hurt

- 12 -